1

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

UNITED STATES OF AMERICA    )    DOCKET NO. 3:00-CR-99-1-V
                            )
        vs.                 )
                            )
BARRON BERNARD RAMSEY,      )
                            )
            Defendant.      )
_____)

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE JAMES C. CACHERIS
UNITED STATES DISTRICT COURT JUDGE
NOVEMBER 19, 2001

APPEARANCES:

On Behalf of the Government:

        BRIAN CROMWELL
        Assistant United States Attorney
        227 West Trade Street, Suite 1700
        Charlotte, North Carolina

On Behalf of the Defendant:

        RANDOLPH M. LEE
        Attorney at Law
        1811 Sardis Road North, Suite 207
        Charlotte, North Carolina

                Cheryl A. Nuccio, RMR-CRR
                Official Court Reporter
                United States District Court
                Charlotte, North Carolina

1                         P R O C E E D I N G S

2              THE COURT:  U.S. versus Ramsey first.  Bernard

3    Ramsey.  Counsel is present:  Mr. Cromwell, Mr. Lee.  Comes on

4    for sentencing.

5              Okay.  Let me ask Mr. Ramsey to be sworn first.

6              (Defendant was sworn.)

7              THE COURT:  Okay.  I'll get to your challenges in

8    just a moment, Mr. Lee.

9              MR. LEE:  Yes, sir.

10             THE COURT:  Mr. Ramsey, have you had a chance to

11   read your presentence report?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  Have you gone over it with Mr. Lee, your

14   lawyer?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Are you satisfied the report is accurate

17   concerning your personal background?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Are you satisfied the report is accurate

20   concerning your offense conduct?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  Okay.  I'll hear the challenges from

23   your counsel.  Do you have any additions or corrections you'd

24   like to make to the report?

25             MR. LEE:  Are you addressing Mr. Ramsey, Your

FORM FED ● PENGAD • 1-800-631-6989

1   Honor?

2           THE COURT:  Yes, sir, Mr. Ramsey and then I'll get

3   to you, Mr. Lee.

4           Do you want to let Mr. Lee take care of that for

5   you?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  All right, sir.  You may have a seat,

8   Mr. Ramsey.

9           Mr. Lee, I know you have a challenge on the career

10  offender as well as the previous convictions.

11          MR. LEE:  Your Honor, those were more legal in

12  nature; and, of course, one can never foresee what the law

13  will be in two years or three years, such as Apprendi or

14  Bailey.  So I've made those objections for the record and

15  they're of a legal nature, Your Honor.

16          THE COURT:  All right, sir.  Do you want to just

17  rely on your objection?

18          MR. LEE:  Yes, sir.

19          THE COURT:  Okay.  Let me just say as to the

20  question concerning double jeopardy, that the defendant

21  objects to -- there is a Fourth Circuit case which is U.S. v.

22  Hampton which is 8 Federal Appendix 1712 -- 2001 WestLaw

23  427834 from the Fourth Circuit, from the Middle District of

24  North Carolina, and which says there's no double jeopardy

25  violation in computation of career offender sentence.  So I

FORM FED  ®  PENGAD · 1-800-631-6989

1 think the Fourth Circuit has answered that. Also, I think

2 there are some other cases that are well on point as to that.

3    Also, the court will note even accepting that

4 argument, that it knows that it can depart upwards or

5 downwards depending on the case for criminal history being

6 overstated, understated, and the court doesn't find that this

7 is an appropriate case to exercise its discretion to depart

8 downward.

9    As to the age of the previous convictions, the prior

10 sentences in paragraphs 31 through 33 were imposed after

11 February 2, 1989. And it's the -- they're supposed to be

12 within 15 months -- 15 years, strike that, 15 years of the

13 defendant's commencement of the instant offense. So that

14 certainly is within that. So I find that that objection

15 should be overruled as well.

16    Okay. He's in a 32/6, 210 to 262 months. Any

17 arguments you want to make, Mr. Lee?

18    MR. LEE: Well, Your Honor, you heard the evidence

19 in this case and there was no direct proof of loss. The jury

20 verdict is what it is.

21    I will let the court know that after the trial in

22 this matter, some weeks or months thereafter, Mr. Ramsey

23 called my office and related to Rachel Goodman in my office

24 that he, in fact, Mr. Ramsey, had had a romantic relationship

25 with Crystal Brown, the bank teller who testified against him,

FORM FED ® PENGAD • 1-800-631-6989

1 | and that it was she who took the money, not he, Mr. Ramsey.
2 | Recently Mr. Ramsey has received information from, quote, the
3 | street, end quote, to the effect that Ms. Crystal Brown has
4 | been out bragging about having taken the money and put him
5 | away.  I mention that for what it's worth.

6 | But more importantly, Your Honor --

7 | THE COURT:  Have you spoken to her yourself?

8 | MR. LEE:  No, sir, I haven't.

9 | THE COURT:  Okay.

10 | MR. LEE:  I did speak to Mr. Cromwell about it and
11 | there was other indicia, frankly, that other people maybe had
12 | taken the money instead, and I felt that was something that I
13 | wish Mr. Ramsey related to me prior to trial but didn't.

14 | But more importantly, Your Honor, Mr. Ramsey has
15 | tried to cooperate before his conviction and after his
16 | conviction and he's taken the initiative to approach several
17 | detectives in various jurisdictions in Charlotte and nearby
18 | and has offered information on several murders of which he has
19 | knowledge and he's tried to cooperate, tried to do the right
20 | thing.  For reasons that I really can't address in detail
21 | today, the U.S. Attorney's Office is not desirous of having
22 | Mr. Ramsey's cooperation.  So what I would ask the court to do
23 | is to take into account his efforts to cooperate and impose a
24 | low end guideline range, if you would, Your Honor.

25 | THE COURT:  All right, sir.  Hear the government's

6

1  argument.  Do you have any additions or corrections to the
2  presentence report?
3            MR. CROMWELL:  No additions or corrections to the
4  presentence report.
5            THE COURT:  I'll adopt the presentence report as the
6  court's findings of fact.
7            Any argument on the sentencing guideline range?
8            MR. CROMWELL:  I believe you indicated the
9  sentencing guidelines was 210 months to 262 months.
10           THE COURT:  262, right.
11           MR. CROMWELL:  Yes.  The statutory maximum for the
12  crime that the defendant committed was 240 months.
13           MR. LEE:  That would be correct, Your Honor.
14           THE COURT:  Okay.
15           MR. LEE:  I just failed to address that.
16           MR. CROMWELL:  And that's the amount of time that
17  the government is going to be asking for.
18           The government is appalled at Mr. Ramsey's
19  accusation that the teller stole the money.  This is not the
20  first time he's tried to divert attention away from him.
21  There has never, ever been any indication at all that the
22  teller was romantically involved with Mr. Ramsey and it's a
23  sad state of affairs that he would come in today and make that
24  representation to the court.
25           As the court well knows, Mr. Ramsey tendered a

1  letter or had intended to tender a letter to his former
2  attorney indicating that Sidney Brown admitted that he stole
3  the money from the bank and that he was bragging about it as
4  well.  So this is the second person that Mr. Ramsey is
5  pointing his -- trying to point to away from him.

6          Your Honor, the government's requesting the top of
7  the range for a reason outside of the actual crime.  The crime
8  itself was heinous.  I talked to the teller several times and
9  she was very upset about what had happened.  The range is a
10 small range and the government was prepared to make a motion
11 for upward departure until it realized that there was a
12 statutory maximum.  This particular defendant, upon his
13 arrest, made representations to both the FBI and law
14 enforcement, to the U.S. Attorney's Office that he knew the
15 whereabouts of a young girl who has been missing for about a
16 year, a girl by the name of Haitia Degree (phonetic).

17         Based on his information, the FBI, navy divers from
18 New York, the Gastonia navy divers went looking for this
19 girl's body.  This defendant called the family of Haitia
20 Degree and told them that he was cooperating with the
21 government to help find her.  After about a several month long
22 goose chase, it was determined that this defendant was
23 attempting to escape from prison and the way he was going to
24 escape from prison was to get out and go on the detail and
25 look for the body.

8

1          He maintains that he knows where Haitia Degree's
2    body is and that is reprehensible.  This poor family has no
3    idea where its daughter is.  And he has taken advantage of
4    those facts to try and pull a fast one on the FBI and on the
5    U.S. Attorney's Office.
6          If there was a way that I could figure out to give
7    him -- to offer more time, I would recommend that to the
8    court, Your Honor.  But as it stands, he deserves every second
9    of the time he gets, and we recommend 240 months.
10         MR. LEE:  If I could briefly, Your Honor.
11         THE COURT:  Yes, sir.
12         MR. LEE:  We --
13         THE COURT:  Is this the cooperation you were talking
14   about?
15         MR. CROMWELL:  That's correct, Your Honor.  He has
16   come back to cooperate again and --
17         THE COURT:  And it's on that case?
18         MR. CROMWELL:  In reference to this particular case,
19   and I wrote a letter to Mr. Lee stating in no uncertain terms
20   that the irreparable damage that this defendant caused on that
21   family will not be forgotten by this office so there is no way
22   that we will ever accept any kind of cooperation from him.
23         THE COURT:  All right, sir.
24         MR. LEE:  Well, Your Honor, there was some other
25   cooperation matters after the conviction.  I spoke with

FORM FED  ® PENGAD · 1-800-631-6989

9

Investigator Walton of the Cornelius Police Department.
Cornelius is a small town north of Charlotte. And Mr. Ramsey
had given information to Detective Walton about a murder.

I was contacted two weeks ago, I think three weeks
ago by Detective Fiori of Charlotte and Detective Feori in his
phone call with me indicated that he had spoken with Mr.
Ramsey. Mr. Ramsey had given more information about the
Haitia Degree murder. But more importantly, or I guess on top
of that, maybe not more importantly, but to corroborate his
bona fides, Mr. Ramsey's bona fides, Mr. Ramsey had given
Detective Fiori information about a murder here in Charlotte
almost two years ago on Highland Drive, and Detective Fiori
tells me that the information that Mr. Ramsey gave is
information that only someone within the small circle of those
involved or acquainted with those who committed the murder
would know. And those are the other efforts that I addressed
to the court earlier.

We, of course, strongly contest and deny that Mr.
Ramsey was trying to cooperate so that he could perfect an
escape from jail. I reviewed the U.S. attorney's evidence on
that and that happened in Cleveland County, I think it was in
Shelby, and there was some other people in the same
cellblock. And I would argue that it would be very ludicrous
for Mr. Ramsey to try to cooperate on the murder, maybe even
implicate himself in the murder, but yet try to escape.

10

1    Furthermore, Your Honor, when Mr. Ramsey was first
2    arrested on this bank robbery case, he was charged in the
3    state system and he was given bond in the state system.  So
4    coming into this case, he had no reason to believe that escape
5    was the only way out.  And so -- but that is what it is, Your
6    Honor.  And it's within the court's discretion.  There's not
7    much else I can say.

8          THE COURT:  All right, sir.  Mr. Ramsey, is there
9    anything you want to say to the court before sentence is
10   pronounced upon you?

11         THE DEFENDANT:  Yeah.  I want to -- first I want to
12   thank my lawyer for representing me.  I apologize to Mr.
13   Cromwell and the U.S. Attorney's Office for any misguidance
14   because a lot of them accusations was -- had been lies because
15   I ain't never tried to escape from no where, no jail.  But
16   nevertheless, you know, I just -- ain't too much I can say.  I
17   just have to appeal my case and come back on it and do it like
18   that.  I mean, so...

19         THE COURT:  All right, sir.  The court is going to
20   commit you to the Bureau of Prisons for 235 months.  3 years'
21   supervised release.  Within 72 hours of your release from the
22   Bureau of Prisons, you shall report to a probation officer in
23   the district where you are released.

24         While on supervised release, you shall not commit
25   another federal, state or local crime, and comply with the

1  standard conditions that have been adopted by the court in the
2  Western District of North Carolina.

3         There will be a $100 special assessment.

4         You will also make restitution to First National
5  Bank of $660 to Thomas Harris, auditor, First National Bank,
6  P.O. Box 168, Shelby, North Carolina 28157.

7         Special assessment and the restitution are due now.

8         I'll find you're unable to pay a fine, cost of
9  imprisonment or supervised release.

10        The reason for the sentence in this case is
11 punishment and deterrence, and the court feels that the 235
12 months is sufficient for that purpose.

13        Advise you that you have the right to appeal and you
14 should note your appeal within ten days.  The court will
15 appoint Mr. Lee to represent you on appeal.  I'll give you
16 credit for time served.

17        Mr. Lee, I take it you're able to take the appeal;
18 is that correct?

19        MR. LEE:  If Mr. Ramsey would like me to take the
20 appeal, I will follow through with it, Your Honor.  I feel
21 obligated and would like to do that.  We've already filed the
22 notice of appeal this morning, Your Honor.

23        THE COURT:  Okay.

24        MR. LEE:  For what it's worth, Mr. Ramsey is a prime
25 candidate for quick disposition in the BOP, so as soon as the

FORM FED  ®  PENGAD · 1-800-631-6989

12

```
 1   court can --
 2              THE COURT:  Okay.  I'm going to enter it today.
 3              MR. LEE:  Thank you, sir.
 4              THE COURT:  Are you court-appointed?
 5              MR. LEE:  Yes, sir.
 6              THE COURT:  I'd like to thank you for acting as
 7   court-appointed counsel.
 8              He's in the custody of the marshals at this time.
 9              (End of proceedings.)
10                             *****
11   UNITED STATES DISTRICT COURT
12   WESTERN DISTRICT OF NORTH CAROLINA
13   CERTIFICATE OF REPORTER
14
15
16
17              I certify that the foregoing transcript is a true
18   and correct transcript from the record of proceedings in the
19   above-entitled matter.
20              Dated this 31st day of January, 2002.
21
22
23                             Cheryl A. Nuccio, RMR-CRR
                               Official Court Reporter
24
25
```